UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

IN RE JAKKS PACIFIC, INC. DERIVATIVE :
ACTION :
 : Case No. 04 Civ. 9441 (RJS)
 :
 :

**MEMORANDUM OF LAW IN SUPPORT OF UNCONTESTED
<u>MOTION FOR FINAL APPROVAL</u>**

**PASKOWITZ LAW FIRM P.C.**
60 East 42nd Street, 46th Floor
New York, NY 10165
Telephone: (212) 685-0969
Facsimile: (212) 685-2306

*Counsel for Plaintiffs Freeport Partners, LLC and
David Oppenheim*

## TABLE OF CONTENTS

                                                                          Page

TABLE OF CONTENTS   .......................................................... i

TABLE OF AUTHORITIES   ..................................................... iii

I. PRELIMINARY STATEMENT   .................................................. 1

II. FACTUAL AND PROCEDURAL BACKGROUND   ............................. 3

III. TERMS AND BENEFITS OF THE SETTLEMENT   ............................ 5

IV. NOTICE TO CURRENT JAKKS STOCKHOLDERS   ............................ 5

V. ARGUMENT   .................................................................. 6

   A.  The Proposed Settlement is Fair, Reasonable and Adequate .................... 6

      1.  Settlements of Complex Actions, Including Shareholder
          Derivative Litigation, are Highly Favored  ............................ 6

      2.  The Role of the Court in Considering a
          Proposed Settlement of a Derivative Suit ............................. 6

      3.  The Settlement Satisfies the Second Circuit's Criteria for
          Approval of Settlements in Shareholder Derivative Actions .............. 7

          i.  The Complexity, Expense and Likely Duration
              of the Action  .............................................. 7

          ii.  Reaction of JAKKS Shareholders to the Proposed Settlement  ...... 8

          iii.  The Stage of the Proceeding  ................................. 9

          iv.  The Risks of Establishing Liability  ......................... 10

          v.  The Risks of Proving Damages  ............................... 11

          vi. The Risk of Maintaining the Action Through Trial  .............. 12

          vii. The Ability of Defendants To Withstand a Greater Judgment  ..... 12

          viii. The Proposed Settlement as a Percentage

of the Best Possible Recovery .............................. 12

    ix.  The Range of Reasonableness in Light
of the Risks of the Litigation ................................ 12

    4. Opinion of Plaintiffs' Counsel ..................................... 13

B. The Fee and Expense Award is Fair and Reasonable and Should be Approved .... 14

    1. Plaintiffs' Counsel are Entitled to Compensation Based
Upon the Substantial Benefits They Have Achieved for the Company ..... 14

    2. Fees Paid to Derivative Counsel Pursuant to Negotiated
Agreements Should be Approved by the Court ....................... 15

    3. Consistent with the Rules of this District, the Fee Should
Be Based Upon a Percentage of the Recovery ........................ 16

    4. The Requested Fees are Fair and Reasonable as a Percentage
of the Benefit Obtained for JAKKS in this Litigation .................. 17

    5. Other Factors .................................................. 18

        i. Complexity of the Litigation ................................. 18

        ii. The Result Achieved and the Quality of Representation .......... 18

        iii. The Risks of the Litigation and the
Contingent Nature of the Fee ............................... 18

VI. CONCLUSION ......................................................... 19

## <u>TABLE OF AUTHORITIES</u>

<u>CASES</u>                                                                     <u>PAGE</u>

*Armstrong v. Board of Sch. Dirs.,*
471 F. Supp. 800 (E.D. Wis. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Aronson v. Lewis,*
473 A.2d 805 (Del. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

*Beam v. Stewart,*
845 A.2d 1040 (Del. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Boyd v. Bechtel Corp.,*
485 F. Supp. 610 (N.D. Cal. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*In re Blech Sec. Litig.,*
2002 U.S. Dist. LEXIS 23170 (S.D.N.Y. Dec. 4, 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Blum v. Stenson,*
465 U.S. 886 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Boeing Co. v. Van Gemert,*
444 U.S. 472 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Briggs v. Hartford Fin. Servs. Group, Inc.,*
2009 U.S. Dist. LEXIS 66777 (E.D. Pa. July 31, 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Bryan v. Pittsburgh Plate Glass Co.,*
494 F.2d 799 (3d Cir. 1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Carson v. American Brands, Inc.,*
450 U.S. 79 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*In re Cendant Corp.,*
232 F.Supp.2d 327 (D.N.J. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Central R.R. & Banking Co. v. Pettus,*
113 U.S. 116 (1885) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Chiulli* v. *Hardwicke Cos.,*
1985 Del. Ch. LEXIS 450 (Del. Ch. Feb. 11, 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*City of Detroit v. Grinnell Corp.,*
495 F.2d 448 (2d Cir. 1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7, 8, 19

*In re Computron Software, Inc. Sec. Litig.,*
6 F. Supp. 2d 313 (D.N.J. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*In re Continental Illinois Sec. Litig.,*
962 F.2d 566 (7th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Emerging Germany Fund, Inc. v. Goldstein,*
1999 U.S. Dist. LEXIS 16473 (S.D.N.Y. Oct. 22, 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Freeport Partners, LLC* v. *Friedman, et al,*
04 Civ. 9441 (RJS) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5

*Goldberger v. Intergrated Res., Inc.,*
209 F.3d 43 (2d Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*In re Gould Sec. Litig.,*
727 F. Supp. 1201 (N.D. Ill. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Granada Invest., Inc. v. DWG Corp.,*
962 F.2d 1203 (6th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*In re Gulf Oil/Cities Serv. Tender Offer Litig.,*
142 F.R.D. 588 (S.D.N.Y. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Hensley v. Eckerhart,*
461 U.S. 424 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 18

*Ingram v. Coca-Cola Co.,*
200 F.R.D. 685 (N.D. Ga. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*In re Ikon Office Solutions, Inc. v. Stuart,*
194 F.R.D. 166 (E.D. Pa. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*In re Jakks Pacific Inc., Shareholders Class Action Litig.,*
04-cv-8807 (RJS) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2, 3

*In re Jiffy Lube Sec. Litig.,*

927 F.2d 155 (4th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Kamen v. Kemper Fin. Servs., Inc.,*
500 U.S. 90 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Larson v. Sprint Nextel Corp.,*
2010 U.S. Dist. LEXIS 3270 (D.N.J. Jan. 15, 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Levine v. Smith,*
591 A.2d 194 (Del. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Lewis v. Newman,*
59 F.R.D. 525 (S.D.N.Y. 1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Little Rock Sch. Dist. v. Pulaski County Special Sch. Dist. No. 1,*
726 F. Supp. 1544 (E.D. Ark. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Maher v. Zapata Corp.,*
714 F.2d 436 (5th Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Malchman v. Davis,*
761 F.2d 893 (2d Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Maley v. Del Global Techs. Corp.,*
186 F. Supp.2d 358 (S.D.N.Y. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Michaels v. Ambassador Group, Inc.,*
1996 U.S. Dist. LEXIS 22579 (E.D.N.Y. June 3, 1996) . . . . . . . . . . . . . . . . . . . . . . . . . 17

*In re Michael Milken & Assocs. Sec. Litig.,*
150 F.R.D. 46 (S.D.N.Y. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Mills v. Electric Auto-Lite Co.,*
396 U.S. 375 (1970) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Milstein v. Huck,*
600 F. Supp. 254 (E.D.N.Y. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*In re NASDAQ Market-Maker Antitrust Litig.,*
187 F.R.D. 465 (S.D.N.Y. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*In re Nat'l Student Marketing Litig.,*
68 F.R.D. 151 (D.D.C. 1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Nelson v. Bennett,*
662 F. Supp. 1324 (E.D. Cal. 1987) ............................................... 10

*Newman v. Stein,*
464 F.2d 689 (2d Cir. 1972) ....................................................... 6

*Oppenheim v. Friedman, et al.,*
05 Civ. 2046 (RJS) ............................................................ 4, 5

*Principe v. Ukropina,*
47 F.3d 373 (9th Cir. 1995) ..................................................... 10

*Pradini v. Nat'l Tea Co.,*
557 F.2d 1015 (3d Cir. 1977) .................................................... 18

*Protective Comm. For Indep. Stockholders of*
*TMT Trailer Ferry, Inc. v. Anderson,* 390 U.S. 414 (1968) ............................. 7

*Republic Nat'l Life Ins. Co. v. Beasley,*
73 F.R.D. 658 (S.D.N.Y. 1977) .................................................... 6

*Rievman v. Burlington N. R.R. Co.,*
118 F.R.D. 29 (S.D.N.Y. 1987) .................................................. 17

*Rogers v. Sterling Foster & Co.,*
238 F.Supp.2d 480 (E.D.N.Y. 2002) .............................................. 17

*Ryan v. Gifford,*
2009 Del. Ch. LEXIS 1 (Del. Ch. Jan. 2, 2009) ................................. 8, 12

*Savoie v. Merchants Bank,*
84 F.3d 52 (2d Cir. 1996) ...................................................... 15

*In re Saxon Sec. Litig.,*
1985 U.S. Dist. LEXIS 14305 (S.D.N.Y. Oct. 31, 1985) ............................. 7

*Schimmel v. Goldman,*
57 F.R.D. 481 (S.D.N.Y. 1973) ................................................... 6

*Schleiff v. Chesapeake & Ohio Ry. Co.,*
43 F.R.D. 175  (S.D.N.Y. 1967) ................................................. 13

vi

*Sheppard v. Consol. Edison Co. of N.Y., Inc.*,
2002 U.S. Dist. LEXIS 16314 (E.D.N.Y. Aug. 1, 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*In re SmithKline Beckman Corp. Sec. Litig.*,
751 F. Supp. 525 (E.D. Pa. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Sprague v. Ticonic Nat'l Bank*,
307 U.S. 161 (1939) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Stone v. Ritter*,
911 A.2d 362 (Del. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Trustees v. Greenough*,
105 U.S. 527 (1882) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 16

*Wallace v. Fox*,
7 F. Supp.2d 132 (D. Conn. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*In re Walt Disney Co. Derivative Litig.*,
907 A.2d 693 (Del. Ch. 2005), *aff'd*, 906 A.2d 27 (Del. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . 11

*In re Warner Commc'ns Sec. Litig.*,
618 F. Supp. 735 (S.D.N.Y. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Warr v. Friedman, et al.*,
Case No. BCC330477 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5

*Weiss v. Mercedes Banz of North Am., Inc.*,
899 F. Supp. 1297 (D.N.J.), *aff'd*, 66 F.3d 314 (3d Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Williams v. First Nat'l Bank*,
216 U.S. 582 (1910) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*World Wrestling Entertainment, Inc. v. JAKKS Pacific, Inc.,et al.*,
No. 04 Civ. 8223 (KMK)  (S.D.N.Y.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*World Wrestling Entertainment, Inc. v. THQ. Inc., et al.*,
No. X05-FST-CV-06-5002512-S (Conn. Sup. Ct.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

**RULES**

Federal Rule of Civil Procedure 23.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6, 10

**MISCELLANEOUS**

*Court Awarded Attorney Fees*, Report of the Third Circuit Task Force,
108 F.R.D. 237 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

I.                      **PRELIMINARY STATEMENT**

Plaintiffs Freeport Partners, LLC ("Freeport") and David Oppenheim ("Oppenheim") (collectively, "Plaintiffs") respectfully submit this memorandum of law in support of their application for final approval of the proposed settlement (the "Settlement") of the above-captioned shareholders' derivative action (the "Action").[1]   The Action was brought for the benefit of JAKKS Pacific, Inc. ("JAKKS" or the "Company").[2]   One of Plaintiffs' primary goals was to ensure that JAKKS' innocent shareholders would not be made to pay for any alleged wrongdoing of individual officers and directors made defendants in the companion class action, *In re Jakks Pacific Inc., Shareholders Class Action Litig.*, 04-cv-8807 (RJS) (the "Securities Class Action").   As set forth below, that goal has been accomplished: pursuant to the global settlement of these actions, millions of dollars necessary to resolve the class action will be paid from a third party source, and not from the corporate till.

The Settlement was the culmination of a multi-year litigation and arm's-length negotiations among experienced counsel who comprehensively understood and debated the merits of the Action.  Plaintiffs believe the Settlement is an excellent result for the Company.

Plaintiffs' Counsel adequately evaluated the Action, the risks of continued litigation, and the benefits of the Settlement. This evaluation has included, *inter alia*: (i) conducting a private investigation related to the allegations asserted in the Action; (ii) inspecting, analyzing and reviewing the Company's filings with the U.S. Securities and Exchange Commission (the

---

[1]      The Stipulation and Agreement of Settlement providing for the Settlement is dated as of November 16, 2009 (the "Stipulation").  Unless otherwise stated, all capitalized terms used herein shall have the same meanings as set forth in the Stipulation.

[2]      Defendants in the Action include the following current and/or former directors and officers of JAKKS: Jack Friedman ("Friedman"), Stephen G. Berman ("Berman"), Joel M. Bennett ("Bennett"), David C. Blatte ("Blatte"), Robert E. Glick ("Glick"), Michael G. Miller ("Miller"), and Murray L. Skala ("Skala").

"SEC"); press releases; announcements; and conference call transcripts; (iii) researching corporate governance issues; (iv) researching the applicable law with respect to the claims asserted in the Action and the potential defenses thereto; and (v) monitoring and reviewing the pleadings; briefs and accompanying exhibits; and the opinions and orders filed in the Securities Class Action; in *World Wrestling Entertainment, Inc. v. JAKKS Pacific, Inc., et al.*, No. 04 Civ. 8223 (KMK) (S.D.N.Y.); and in *World Wrestling Entertainment, Inc. v. THQ Inc., et al.*, No. X05-FST-CV-06-5002512-S (Conn. Sup. Ct.).

On June 29, 2010, the Court entered an Order (the "Preliminary Order") directing that a final settlement hearing be held on October 19, 2010 (the "Final Hearing") to determine the fairness, reasonableness and adequacy of the Settlement and the Fee and Expense Award. Pursuant to the Preliminary Order, the Notice to Current Shareholders was filed with the SEC by JAKKS in the form of a Current Report on Form 8-K on August 26, 2010. A Summary Notice of the Settlement was published by JAKKS in Investor's Business Daily on August 27, 2010 and the full Notice was published on the Company's website commencing on August 27, 2010.

The filing and prosecution of the Action was a material and substantial contributing cause of the global resolution of the Action and the Securities Class Action, and the Settlement provides substantial benefits to JAKKS. As set forth at ¶¶ 2-3 of the Stipulation, Defendants shall cause their directors and officers liability insurance carrier to pay JAKKS, on behalf of individual Defendants, the sum of $4,090,000, which amount JAKKS shall cause to be applied to settle the Securities Class Action and related expenses in the Action. JAKKS and individual Defendants have acknowledged that this payment confers a substantial benefit upon JAKKS. As a result of the substantial benefits provided in the Action, the Settlement should be approved by the Court.

II.           **FACTUAL AND PROCEDURAL BACKGROUND**

JAKKS is a Delaware corporation with its principal executive offices located in Malibu, California. The Company operates as a designer and marketer of toys and other consumer products.[3]

Beginning on November 5, 2004, a number of securities class action complaints were filed in this Court on behalf of purchasers of JAKKS common stock commencing on December 3, 1999 and ending on October 19, 2004, (the "Class Period"), asserting violations of the Securities Exchange Act of 1934 (the "Exchange Act"). Those securities class actions were later consolidated into the Securities Class Action.

On July 11, 2005, the lead plaintiffs in the Securities Class Action filed a consolidated complaint against defendants JAKKS, Friedman, Berman and Bennett, alleging that in order to procure valuable international license agreements to manufacture and market World Wrestling Entertainment, Inc. ("WWE") products, JAKKS allegedly bribed a senior WWE executive, James Bell ("Bell"), and WWE's licensing agent, Stanley Shenker & Associates, Inc. ("SSAI"). In exchange for the alleged bribes from JAKKS, which were allegedly laundered through foreign corporations, Bell and SSAI allegedly agreed to assist JAKKS in securing a WWE videogame license and favorable amendments to the toy licenses. During the Class Period, JAKKS publicly reported positive financial results which it attributed, in material part, to its WWE product line.

Approximately one month after the commencement of the Securities Class Action, on December 2, 2004, Plaintiff Freeport initiated a shareholder's derivative action on behalf of JAKKS, entitled *Freeport Partners, LLC* v. *Friedman, et al.,* 04 Civ. 9441 (RJS) (the "*Freeport* Action"), in this Court. In the *Freeport* Action, Freeport sought relief on behalf of the Company

---

[3]        The background of the Action set forth herein is taken from the Stipulation, pp. 1-4.

3

based upon allegations that Defendants Friedman, Berman and Bennett, *inter alia,* violated Section 10(b) of the Exchange Act, 15 U.S.C. §§ 78j(b), and were unjustly enriched, and breached their fiduciary duties owed to JAKKS by engaging in conduct that harmed the Company, including exposing JAKKS to potential liability under the Exchange Act.

On February 10, 2005, Plaintiff Oppenheim commenced a shareholder derivative action on behalf of JAKKS entitled *Oppenheim v. Friedman, et al.,* 05 Civ. 2046 (RJS) (the "*Oppenheim* Action"), in this Court.  In the *Oppenheim* Action, Oppenheim sought relief based upon averments similar to those raised in the *Freeport* Action, alleging that Defendants breached various fiduciary duties owed to JAKKS by engaging in conduct that harmed the Company.

Plaintiffs' overriding purpose in filing the *Freeport* Action and the *Oppenheim* Action was to ensure that if JAKKS was held liable for violation of the federal securities laws, or if such litigation resulted in a settlement, the individual Defendants (or their insurers) would pay a fair portion of any judgment or settlement.

Thereafter, on March 17, 2005, Tony Warr ("Warr") commenced a shareholder's derivative action on behalf of JAKKS entitled *Warr v. Friedman, et al.*, Case No. BCC330477, in the Superior Court of the State of California, County of Los Angeles (the "State Derivative Action"), against Defendants and Does 1-25.  *Id.* at 2-3.  In the State Derivative Action, Warr sought relief based upon allegations similar to those raised previously in this Court in the *Freeport* Action and *Oppenheim* Action, and claimed that Defendants violated California Corporations Code § 25402, breached various fiduciary duties owed to JAKKS by engaging in conduct that harmed the Company, abused their control of the Company, grossly mismanaged the Company, wasted corporate assets and were unjustly enriched.  The State Derivative Action

was subsequently voluntarily dismissed without prejudice.[4]

On November 16, 2009, the Parties to the *Freeport* Action and the *Oppenheim* Action entered into the Stipulation to settle the *Freeport* Action and the *Oppenheim* Action.  On June 28, 2010, pursuant to a stipulation approved by the Court, the *Freeport* Action and the *Oppenheim* Action were formally consolidated, and on June 29, 2010, the Court entered the Preliminary Order.

**III.**          **TERMS AND BENEFITS OF THE SETTLEMENT**

As set forth in the Stipulation, Defendants shall cause their directors' and officers' liability insurance carrier to pay to JAKKS, on behalf of Defendants, the sum of $4,090,000. (Stipulation, p. 9).  Defendants have acknowledged that the payment of $4,090,000 to JAKKS "is a substantial benefit to JAKKS" and that the pendency of the Action "was a material and substantial contributing cause for the global resolution of all the pending litigation, which also provides for a substantial benefit to JAKKS."  (Stipulation, p. 4).

**IV.**          **NOTICE TO CURRENT JAKKS STOCKHOLDERS**

Pursuant to the Preliminary Order, the Company filed the Notice to Current Shareholders with the SEC as an attachment to a Current Report on Form 8-K on August 26, 2010.   In addition, pursuant to the Preliminary Order, JAKKS published the Notice in the Investor's Business Daily on August 27, 2010 and on the Company's website on August 27, 2010.

---

[4]     Once the Settlement is finally approved by this Court, and the Court has entered the Order and Final Judgment, the State Derivative Action shall be treated by all Parties for all purposes as if it had been dismissed with prejudice. (Stipulation, p. 15).

V.                                          **ARGUMENT**

A.      **THE PROPOSED SETTLEMENT IS FAIR,**
        **REASONABLE, AND ADEQUATE**

        1.      **Settlements of Complex Actions, Including**
                **Shareholder Derivative Litigation, are Highly Favored**

It is well-settled that "[c]ompromises of disputed claims are favored by the courts."

*Williams v. First Nat'l Bank*, 216 U.S. 582, 595 (1910) (citation omitted); *accord City of Detroit*

*v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974). This is particularly true with shareholder

derivative actions because the cases are "notoriously difficult and unpredictable."  *Maher v.*

*Zapata Corp.*, 714 F.2d 436, 455 (5th Cir. 1983) (citations omitted); *accord, Granada Invest.,*

*Inc. v. DWG Corp.*, 962 F.2d 1203, 1205 (6th Cir. 1992); *Republic Nat'l Life Ins. Co. v. Beasley,*

73 F.R.D. 658, 667 (S.D.N.Y. 1977).

        2.      **The Role of the Court in Considering a**
                **Proposed Settlement of a Derivative Suit**

Rule 23.1 of the Federal Rules of Civil Procedure provides that a shareholder derivative

action "may be . . . voluntarily dismissed . . . only with the court's approval."  In shareholder

derivative actions, as in other representative actions, the court plays an important role as a

protector of the absent shareholders' interest. *See Newman v. Stein*, 464 F.2d 689, 691-92 (2d

Cir. 1972).  Thus, the ultimate determination of whether a proposed settlement of a shareholder

derivative action warrants approval resides in the District Court's discretion. *See, e.g.*, *Maher*,

714 F.2d at 454-55.

However, the Court should not substitute its judgment for that of the parties who

negotiated the settlement. *See Bryan v. Pittsburgh Plate Glass Co.,* 494 F.2d 799, 804 (3d Cir.

1974). Similarly, courts are not to litigate the merits of the action, but instead are to consider the

likelihood of success on the merits of the claims balanced against the amount and form of relief

6

offered in the settlement. *Carson v. American Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981); *see also City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 462 (2d Cir. 1974) ("The court is only called upon to consider and weigh the nature of the claim, the possible defenses, the situation of the parties, and the exercise of business judgment in determining whether the proposed settlement is reasonable.") (citations omitted).  Also, it is not the role of the Court "to reopen and enter into negotiations with the litigants in the hopes of improving the terms of the settlement." *In re Saxon Sec. Litig.*, 1985 U.S. Dist. LEXIS 14305, at *16 (S.D.N.Y. Oct. 31, 1985) (citations omitted).

### 3.    The Settlement Satisfies the Second Circuit's Criteria for Approval of Settlements in Shareholder Derivative Actions

The standard for reviewing a proposed settlement of a shareholder derivative action is whether the settlement is fair and reasonable. *Grinnell*, 495 F.2d at 455.  The factors are the: (1) complexity, expense and likely duration of the litigation; (2) reaction of other shareholders to the settlement; (3) stage of proceeding and the amount of discovery completed; (4) risks of establishing liability; (5) risks of proving damages; (6) risks of maintaining the action through the trial; (7) ability of defendants to withstand a greater judgment; (8) range of reasonableness in light of the maximum possible recovery; and (9) range of reasonableness in light of all the attendant risks of the litigation. *Id.* at 463.  The proposed settlement here amply satisfies each of these criteria.

### i.    The Complexity, Expense and Likely Duration of the Action

Court have consistently held that "[t]he expense and possible duration of the litigation should be considered in evaluating the reasonableness of th[e] settlement . . . ." *Milstein v. Huck*, 600 F. Supp. 254, 267 (E.D.N.Y. 1984); *see also Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968).  Here, a failure to settle the

7

Action now would make no sense because the Settlement benefits accomplish what Plaintiffs set out to achieve at the outset of the Action, preventing the innocent shareholders from bearing the cost of settlement of the Securities Class Action. The Settlement achieves that goal. Indeed, it is an excellent result for the Company and current JAKKS stockholders in light of the challenges Plaintiffs would have faced going forward with the prosecution of the Action. In particular, the Settlement provides for a monetary payment to JAKKS of nearly $4.1 million. This financial relief to JAKKS is substantial, certain and will be available for JAKKS immediately. *See, e.g., Ryan v. Gifford,* 2009 Del. Ch. LEXIS 1, at *31 (Del. Ch. Jan. 2, 2009) (approving settlement of derivative action which provided financial relief for the company because, *inter alia*, such financial relief produced "benefits to Maxim that are substantial and certain").

### ii.      Reaction of JAKKS Shareholders
###          to the Proposed Settlement

As set forth above, notice has been provided to the current JAKKS shareholders. Pursuant to the terms of the Preliminary Order, any objections to the Settlement had to be lodged with the Court and served on the parties no later than September 28, 2010. No JAKKS shareholder has objected to the Settlement. The lack of any objection is powerful evidence that the proposed settlement is fair to JAKKS. "[T]he reaction of the class to the proffered settlement is perhaps the most significant factor to be weighed in considering its adequacy . . . ." *In re SmithKline Beckman Corp, Sec. Litig.,* 751 F. Supp. 525, 530 (E.D. Pa. 1990); *see Chiulli* v. *Hardwicke Cos.,* 1985 Del. Ch. LEXIS 450, at *4 (Del. Ch. Feb. 11, 1985) (stating that in the absence of an objection, approval of settlement "would be almost perfunctory"); *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 462 (2d Cir. 1974); *Maley v. Del Global Techs. Corp.*,186 F. Supp.2d 358, 362 (S.D.N.Y. 2002); *In re Michael Milken & Assocs. Sec. Litig.*, 150 F.R.D. 46, 56 (S.D.N.Y. 1993).

8

### iii.    The Stage of the Proceeding

Where a settlement is reached prior to formal discovery, it is nevertheless appropriate to approve the settlement if there is no evidence of collusion and the settlement represents substantial concessions by both sides. *See, e.g., In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 159 (4th Cir. 1991). Settlements at an early stage are favored by the courts. *In re Computron Software, Inc. Sec. Litig.*, 6 F. Supp. 2d 313, 318 (D.N.J. 1998).

Here, although the parties were able to reach a comparatively early resolution of the Action, it was not until Plaintiffs' Counsel achieved the relief that they were seeking that the decision was made to settle the Action. In addition, Plaintiffs' Counsel had sufficient knowledge of the facts in the Action to make an intelligent decision about Settlement. *Cf. Larson v. Sprint Nextel Corp.,* 2010 U.S. Dist. LEXIS 3270, at *62 (D.N.J. Jan. 15, 2010) (counsel had sufficient information to settle where they had access to materials in related cases that "enabled Class Counsel to assess the strengths and weaknesses of the class claims and damage theories, as well as the strengths and weaknesses of Sprint's counterclaims"); *Briggs v. Hartford Fin. Servs. Group, Inc.*, 2009 U.S. Dist. LEXIS 66777, at *37-38 (E.D. Pa. July 31, 2009) (formal discovery not required where class counsel had sufficient information from other sources); *In re Gulf Oil/Cities Serv. Tender Offer Litig.*, 142 F.R.D. 588 (S.D.N.Y. 1992).

Although further discovery would have been necessary to prepare this case for trial, Plaintiff does not believe that such further discovery would have enhanced the likelihood of a greater recovery. Indeed, Plaintiffs' Counsel believes that the Settlement accomplishes all of what the litigation set out to do.

### iv.      The Risks of Establishing Liability

The risks of establishing liability are great in this case because of the procedural setting of a shareholder derivative action.    The odds of winning a derivative case have been characterized by courts as being "extremely small." *Principe v. Ukropina*, 47 F.3d 373, 378 & n.4 (9th Cir. 1995) (*citing* Thomas M. Jones, *An Empirical Examination of the Resolution of Shareholder and Class Action Lawsuits*, 60 B. U. L. Rev. 542, 544-45 (1980) (finding that derivative lawsuits resulted in judgment for plaintiffs in less than one percent of cases)). Thus, in evaluating the settlement of a shareholder action, courts have long recognized that such litigation "is notably difficult and notoriously uncertain," *Lewis v. Newman,* 59 F.R.D. 525, 528 (S.D.N.Y. 1973), and that compromise is particularly appropriate, *see Nelson v. Bennett,* 662 F. Supp. 1324, 1334 (E.D. Cal. 1987).

Although Rule 23.1 of the Federal Rules of Civil Procedure provides the procedural framework for shareholder derivative actions, the substantive law is governed by the law of the state of incorporation.  *See Kamen v. Kemper Fin. Servs., Inc.,* 500 U.S. 90, 97-99 (1991).  Here, JAKKS is incorporated under the laws of Delaware and Defendants would contend that the complaint particularizes facts which create a reasonable doubt that "(1) the directors are disinterested and independent and (2) the challenged transaction was otherwise the product of a valid exercise of business judgment." *Aronson v. Lewis*, 473 A.2d 805, 814 (Del. 1984).

Here, Plaintiffs did not make a pre-suit demand on the Board to commence the Action. Thus, absent Settlement, there is, at the least, an open question as to whether Plaintiffs would be subject to a dismissal Motion for the failure to make pre-suit demand.  Plaintiffs would then first have to establish that demand on the Board was excused.  *See*, *e.g., Aronson*, 473 A.2d 805. Establishing demand futility is always an uncertain proposition, particularly where, as here, a

10

significant portion of the Board consists of "outside" directors.  *See, e.g., Beam v. Stewart*, 845 A.2d 1040, 1048-52 (Del. 2004); *Levine v. Smith*, 591 A.2d 194, 197-208 (Del. 1991).  Indeed, as Plaintiffs' Counsel can attest through their own substantial personal experience in this area of the law, the pre-suit demand requirement is no empty procedural test.

Even assuming Plaintiffs had adequately alleged demand futility, they still would have had to overcome the protections afforded the Board under the so-called "business judgment rule."   The business judgment rule generally affords a presumption that, in making a disinterested business decision, the directors of a Delaware corporation acted on an informed basis, in good faith, and with the honest belief that the action taken was in the best interests of the corporation.  *See In re Walt Disney Co. Derivative Litig.*, 907 A.2d 693, 746-47 (Del. Ch. 2005), *aff'd*, 906 A.2d 27 (Del. 2006); *Aronson,* 473 A.2d at 812.  So too, the standard to hold a director liable for the breach of his fiduciary duty is difficult to demonstrate.  *See, e.g. Stone v. Ritter*, 911 A.2d 362, 369 (Del. 2006) ("A failure to act in good faith may be shown, for instance, where the fiduciary intentionally acts with a purpose other than that of advancing the best interests of the corporation, where the fiduciary acts with the intent to violate applicable positive law, or where the fiduciary intentionally fails to act in the face of a known duty to act, demonstrating a conscious disregard for his duties.").

For all of the reasons set forth above, while Plaintiffs believed in their claims, they could not disregard the risks of further litigation and the costs associated therewith, especially in light of the substantial benefits achieved by the Settlement.

v.      <u>**The Risks of Proving Damages**</u>

Damages are always a major issue in any litigation.  There is no guarantee that Plaintiffs would have been able to quantify and prove damages.  Proof of damages is always difficult in

11

litigation of this type, and therefore a risk remained that Plaintiffs would not be successful, or would be far less successful than it would initially appear they could be.

Given the uncertain outcome of the Securities Class Action claims against JAKKS and the other Defendants, the risk that under a litigated scenario, the benefits achieved here might not have been available, the Settlement here provides the certainty of known, material financial relief of nearly $4.1 million to the Company. *See, e.g., Ryan v. Gifford,* 2009 Del. Ch. LEXIS 1, at *28 (Del. Ch. Jan. 2, 2009). Thus, complex damages issues versus the known benefits of Settlement clearly weigh highly in favor of its approval.

### vi.    The Risks of Maintaining the Action Through Trial

As set forth above, the risks of maintaining the Action through trial were significant and could have resulted in no recovery at all.

### vii.    The Ability of Defendants To Withstand a Greater Judgment

No greater judgment might be had, as the Settlement provides JAKKS with full relief, a rare event in any shareholder litigation. As such, the Settlement is a significant benefit to JAKKS and should be approved.

### viii.    The Proposed Settlement as a Percentage of the Best Possible Recovery

As discussed immediately above, this Settlement provides for a full recovery. Given the aims of the Action, the Settlement is the best recovery achievable under the circumstances.

### ix.    The Range of Reasonableness in Light of the Risks of the Litigation

The risks of the litigation have been discussed above. Recoverable damages depending upon certain legal barriers and the theory applied to a proper measuring of damages for the

12

claims could have, in fact, been zero.  Also, as discussed above, the risk of maintaining the Action as a shareholder derivative action and of proving liability were quite substantial.  The recovery in light of those significant risks is under any measure a fair, reasonable and adequate, if not excellent, result.

### 4.    Opinion of Plaintiffs' Counsel

In appraising the fairness of the Settlement, the opinion and recommendation of experienced counsel favoring the settlement is entitled to considerable weight.  As one court stated: "The recommendations of plaintiffs' counsel should be given a presumption of reasonableness.  Attorneys, having intimate familiarity with a lawsuit after spending years in litigation, are in the best position to evaluate the action, and the Court should not without good cause substitute its judgment for theirs." *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979) (citation omitted); *see also In re Nat'l Student Marketing Litig.*, 68 F.R.D. 151, 155 (D.D.C. 1974) (stating that "[t]he opinion and judgment of experienced counsel, whose labors produced the settlement, should also receive due consideration"); *Schleiff v. Chesapeake & Ohio Ry. Co.*, 43 F.R.D. 175, 179 (S.D.N.Y. 1967) (noting that "recommendation of the compromise by the experienced counsel for plaintiffs is entitled to great weight").

Here, Plaintiffs' Counsel have litigated scores of shareholder class and derivative actions and have well-known national reputations of pursuing their cases to successful resolutions.[5] Plaintiffs' Counsel have made a considered judgment based on their knowledge of the facts of the Action and their extensive experience that the Settlement is in the best interests of JAKKS and is an excellent achievement under all the circumstances.

---

[5]     *See* Firm Biographies of Paskowitz Law Firm, P.C., Roy Jacobs & Associates and The Weiser Law Firm, P.C., annexed to the Declaration of Roy L. Jacobs sworn to October 10, 2010, as Exhibits A, B and C, respectively.

**B.**     **THE FEE AND EXPENSE AWARD IS FAIR AND**
           **REASONABLE AND SHOULD BE APPROVED**

Plaintiffs' Counsel also seek final approval of the Fee and Expense Award, a total sum of

$165,000.  The Fee and Expense Award is meant to compensate Plaintiffs' Counsel for their

efforts in prosecuting the Action on a fully contingent basis and obtaining an excellent

Settlement which favorably resolves the issues involved in the Action.  The Fee and Expense

Award was negotiated at arm's-length only after the Settlement terms had been agreed upon.  As

discussed herein, the Fee and Expense Award is reasonable in light of the significant benefits

achieved, the efforts expended in securing the benefits set forth herein, and the entirety of the

relevant circumstances.  Thus, Plaintiffs' Counsel respectfully submits that the Fee and Expense

Award is fair and reasonable, and warrants the Court's final approval.

**1.**     **Plaintiffs' Counsel are Entitled to Compensation**
           **Based Upon the Substantial Benefits They Have**
           **Achieved for the Company**

Under the "American Rule" each party ordinarily bears its own costs and attorney fees.

*See, e.g., Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983).  An exception to this general rule is

that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than

himself or his client is entitled to a reasonable attorney's fee from the fund as a whole."  *Boeing*

*Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *Mills v. Electric Auto-Lite Co.,* 396 U.S. 375, 394-

96 (1970); *see Trustees v. Greenough,* 105 U.S. 527 (1882).  "This doctrine serves the twin goals

of removing a potential financial obstacle to a plaintiffs' pursuit of a claim on behalf of a class

and of equitably distributing the fees and costs of successful litigation among all who gained

from the named plaintiff's efforts."  *In re Gould Sec. Litig.,* 727 F. Supp. 1201, 1202-03 (N.D.

Ill. 1989).  Here, a substantial benefit has been created for JAKKS which, as in class cases,

merits the award of an attorney's fee based upon the benefit achieved under the analogous

"substantial benefit" doctrine. *E.g.*, *Savoie v. Merchants Bank,* 84 F.3d 52, 56 & n. 3 (2d Cir. 1996); *Emerging Germany Fund, Inc. v. Goldstein,* 1999 U.S. Dist. LEXIS 16473, at *8-9 (S.D.N.Y. Oct. 22, 1999). The reasonableness of the request is further supported by the fact that the sum requested is the result of arm's-length bargaining among counsel, and it will be paid out of insurance proceeds rather than by JAKKS itself.

### 2.   Fees Paid to Derivative Counsel Pursuant to Negotiated Agreements Should be Approved by the Court

That the Fee and Expense Award was negotiated at arm's-length and apart from the consideration being provided to the Company validates the fact that it is reasonable and should be approved. *See Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) (holding that an agreed-to fee is ideal because "[a] request for attorney's fees should not result in a second major litigation. Ideally, of course, litigants will settle the amount of a fee").

Where there is no evidence of collusion and no detriment to the class, "the Court should give substantial weight to a negotiated fee amount." *Ingram v. Coca-Cola Co.*, 200 F.R.D. 685, 695 (N.D. Ga. 2001); *see Court Awarded Attorney Fees*, Report of the Third Circuit Task Force, 108 F.R.D. 237 (1985); *Sheppard v. Consol. Edison Co. of N.Y., Inc.*, 2002 U.S. Dist. LEXIS 16314, at *25-26 (E.D.N.Y. Aug. 1, 2002) (approving award representing 12.9% of the total settlement value); *Armstrong v. Board of Sch. Dirs.*, 471 F. Supp. 800, 810-11 (E.D. Wis. 1979); *Little Rock Sch. Dist. v. Pulaski County Special Sch. Dist. No. 1*, 726 F. Supp. 1544 (E.D. Ark. 1989).

Here, the Parties' negotiations were based upon a knowledgeable analysis of what an appropriate fee would be for the benefits achieved and the fees awarded in similar situations. Plaintiffs' Counsel negotiated with their adversaries, who saw their efforts firsthand. Defendants' Counsel are attorneys who are employed by some of the most respected firms in the

15

country, have litigated complex representative actions for many years and know the applicable law pertaining to fee awards. In such circumstances, the end result of those negotiations -- which reflects the Parties' experiences as to what is appropriate -- is entitled to a significant weight in passing on the fee request.

For example, in *Malchman v. Davis*, 761 F.2d 893, 905 n.5 (2d Cir. 1985), the Second Circuit concluded that courts should be hesitant to interfere in fee arrangements between settling parties in shareholder actions when defendants have agreed "not to oppose" the payment of fees up to a certain amount:

> [W]here . . . the amount of fees is important to the party paying them, as well as to the attorney recipient, it seems to the author of this opinion that an agreement "not to oppose" an application for fees up to a point is essential to completion of the settlement, because the defendants want to know their total maximum exposure and the plaintiffs do not want to be sandbagged. It is difficult to see how this could be left entirely to the court for determination after the settlement.

The Court should therefore uphold the parties' agreement and approve Plaintiffs' Counsel fee application.

### 3.    Consistent with the Rules of this District, the Fee Should Be Based Upon a Percentage of the Recovery

The United States Supreme Court has consistently held in decisions involving the computation of a common fee award that the fee should be determined on a percentage-of-the-fund basis. *See, e.g., Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161 (1939); *Central R.R. & Banking Co. v. Pettus*, 113 U.S. 116 (1885); *Trustees v. Greenough*, 105 U.S. 527, 532, (1882). Indeed, the Supreme Court expressly approved the use of the percentage-of-the-recovery approach in common fund cases, stating that "under the 'common fund doctrine,' . . . a reasonable fee is based on a percentage of the fund bestowed on the class . . . ." *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984).

16

The Second Circuit has authorized the use of the percentage approach in awarding fees in common fund cases. *Goldberger v. Intergrated Res., Inc.,* 209 F.3d 43, 49-50 (2d Cir. 2000).

### 4.    The Requested Fees are Fair and Reasonable as a Percentage of the Benefit Obtained for JAKKS in this Litigation

Plaintiffs' Counsel are applying for an award of $165,000 covering both attorneys' fees and expenses. Total expenses incurred or accrued in connection with this Action amount to less than $5,000. Thus, the fee amounts to less than 4 percent of the value of the benefits created in the Action. The requested fee is fair and reasonable and substantially below fee awards in similar cases. *See, e.g., Rogers v. Sterling Foster & Co.,* 238 F.Supp.2d 480, 490 (E.D.N.Y. 2002) (awarding 25% of benefit); *In re Blech Sec. Litig.*, 2002 U.S. Dist. LEXIS 23170, at * 5-6 (S.D.N.Y. Dec. 4, 2002) (approving 33 1/3%); *Michaels v. Ambassador Group, Inc.*, 1996 U.S. Dist. LEXIS 22579 (E.D.N.Y. June 3, 1996) (awarding a 35% fee).[6]

---

[6]    As noted above, Plaintiffs' Counsel respectfully submit that the lodestar/multiplier method for determining an award of attorneys' fees is contrary to the relevant Supreme Court authority and the present trend in the law. While Plaintiffs' Counsel believe that such a showing should not be necessary, many courts continue to use the lodestar method as a check to insure the fairness of the percentage award. *See, e.g., Goldberger,* 209 F.3d at 50. Plaintiffs submit that a lodestar/multiplier analysis confirms that the requested fees are fair and reasonable and, as such, should be approved. Here, the combined lodestar of Plaintiffs' Counsel is approximately $110,000, resulting in a multiplier of approximately 1.5, which is significantly lower than the multipliers quite often approved. *See In re Cendant Corp.,* 232 F.Supp.2d 327, 342 (D.N.J. 2002) (in evaluating derivative settlement, "the Court finds that a risk factor of 2.59 is reasonable"); *In re Ikon Office Solutions, Inc. v. Stuart,* 194 F.R.D. 166, 195 (E.D. Pa. 2000) (derivative and class counsel received 2.7 multiple); *Wallace v. Fox,* 7 F. Supp.2d 132, 141 (D. Conn. 1998) (multiplier of 1.5 deemed appropriate in shareholder's derivative action); *In re NASDAQ Market-Makers Antitrust Litig.,* 187 F.R.D. 465, 489 (S.D.N.Y. 1998) (multiple of 3.97 deemed not unreasonable) (*citing Rabin v. Concord Assets Group, Inc.,* [1991-92] Fed. Sec. L. Rep. (CCH) ¶96,471 (S.D.N.Y. 1991) (applying multiplier of 4.4)); *Rievman v. Burlington N. R.R. Co.,* 118 F.R.D. 29, 35 (S.D.N.Y. 1987) ("multipliers of between 3 and 4.5 have been common").

### 5.   Other Factors

#### i.   Complexity of the Litigation

As detailed above, this case involved both complex factual and legal issues, including difficult issues related to the federal securities laws and fiduciary duty law.

#### ii.   The Result Achieved and the Quality of Representation

The result achieved and the quality of the services provided are also "important" factors to be considered in determining the amount of reasonable attorneys' fees under a lodestar/multiplier analysis. *See, e.g., Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) ("most critical factor is the degree of success obtained"); *Pradini v. Nat'l Tea Co.*, 557 F.2d 1015, 1019-20 (3d Cir. 1977) ("the 'quality' factor requires the court to adjust a fee on the basis of results of the work performed"). Here Plaintiffs' Counsel have achieved a substantial benefit for JAKKS as a result of this litigation.

The quality of opposing counsel is also important in evaluating the quality of the services rendered by Plaintiffs' Counsel. *See, e.g., In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 749 (S.D.N.Y. 1985). Here, the Defendants were principally represented by Skadden, Arps, Slate, Meagher & Flom LLP, one of New York City's most prominent and capable large law firms, with a well-deserved reputations for excellent and vigorous representation of their clients' interests. The ability of Plaintiffs' Counsel to obtain a favorable settlement in the face of such formidable legal representation further evidences the quality of their work.

#### iii.   The Risks of the Litigation and the Contingent Nature of the Fee

The risks of litigation are an important factor to be considered in making an appropriate fee award. Thus, the Second Circuit explained:

18

> No one expects a lawyer whose compensation is contingent upon his success to charge, when successful, as little as he would charge a client who in advance had agreed to pay for his services, regardless of success. Nor, particularly in complicated cases producing large recoveries, is it just to make a fee depend solely on the reasonable amount of time expended.

*City of Detroit v. Grinnell Corp.,* 495 F.2d 448, 470-71 (2d Cir. 1974) (citation omitted). The Seventh Circuit has explained in *In re Continental Illinois Sec. Litig.*, 962 F.2d 566 (7th Cir. 1992) that:

> [T]he failure to make any provision for risk of loss may result in systematic undercompensation of plaintiffs' counsel in a . . . case, where as we have said the only fee that counsel can obtain is, in the nature of the case, a contingent one.

For all of these reasons the fee requested is reasonable and appropriate and should be approved.

## VI.                           CONCLUSION

The Settlement clearly represents a fair, adequate and reasonable result in light of the nature and strength of Plaintiffs' claims, the defenses thereto, the procedural posture of the Action and all other pertinent facts and circumstances. Moreover, the agreed-to Fee and Expense Award is entirely fair and reasonable in light of the substantial benefits achieved in the Action. Accordingly, for all of the foregoing reasons, Plaintiffs respectfully request that the Court finally approve the Settlement and the Fee and Expense Award.

Dated: October 12, 2010

**PASKOWITZ LAW FIRM, P.C.**

By:   /s/   Laurence D. Paskowitz
            Laurence D. Paskowitz

(A member of the Bar of this Court)
60 East 42nd Street, 46th Floor
New York, NY 10165
212-685-0969

19

Roy L. Jacobs
**ROY JACOBS & ASSOCIATES**
(A member of the Bar of this Court)
60 East 42nd Street, 46th Floor
New York, NY 10165
212-685-0969

*Counsel for Freeport Partners, LLC
and David Oppenheim*

**CERTIFICATE OF SERVICE**

I, Roy L. Jacobs, one of plaintiffs' counsel in this action, hereby certify that the foregoing document was served upon all subscribers to this matter via the ECF electronic notification system on October 12, 2010.


/s/ Roy L. Jacobs
Roy L. Jacobs