# THE WEISER LAW FIRM, P.C.

## A LEADING NATIONAL SHAREHOLDER LITIGATION FIRM DEDICATED EXCLUSIVELY TO PROTECTING INDIVIDUAL AND INSTITUTIONAL SHAREHOLDERS' INTERESTS AND PROMOTING IMPROVED CORPORATE GOVERNANCE PRACTICES

### *FIRM BIOGRAPHY*

The Weiser Law Firm, P.C., a national shareholder litigation firm, was founded by its two principals, Patricia C. Weiser and Robert B. Weiser, in December, 2004. Prior to December, 2004, Ms. Weiser and Mr. Weiser had both managed litigation groups at one of the nation's largest shareholder litigation firms. The Weiser Law Firm is devoted to protecting the interests of individual and institutional investors in shareholder class, derivative and ERISA actions in state and federal courts nationwide. The attorneys at The Weiser Law Firm devote a large percentage of their time to addressing complex corporate governance issues. Unlike most boutique stockholder litigation firms, the Weiser Law Firm has an active trial practice, and in the last year alone, they have tried two different stockholder actions.

### PATRICIA C. WEISER

Ms. Weiser, a founding member of the firm, received her law degree from the Widener University School of Law in Wilmington, Delaware. While in law school, she served as an intern for the Honorable Clarence J. Newcomer, U.S.D.J. for the Eastern District of Pennsylvania. She is licensed to practice law in Pennsylvania and New Jersey and has been admitted to practice before the United States District Court for the Eastern District of Pennsylvania and the United States District Court for the Eastern District of Michigan.

Ms. Weiser's practice is focused on shareholder class action litigation challenging management misconduct in connection with corporate takeovers and disputed contests for corporate control. Ms. Weiser participated as lead or co-lead counsel in the following notable cases:

> *In re Storage USA Shareholder Litigation (Shelby County Chancery Court, Tennessee)*, in which Class Counsel were solely responsible for an aggregate financial benefit to the

class of $10.5 million in connection with the acquisition of the company by its controlling shareholder;

*In re Cox Communications Shareholder Litigation (Delaware Chancery Court)*, in connection with the acquisition of the company by its controlling shareholder, Cox Enterprises, Class Counsel shared responsibility for the agreement by Cox Enterprises to condition the transaction on the approval of a majority of the company's minority shareholders and to increase the consideration offered in the transaction by approximately $675 million;

*In re Sodexho Marriot Shareholders Litigation (Delaware Chancery Court)*, in which Class Counsel shared responsibility for creating an aggregate financial benefit of approximately $166 million for members of the class, in connection with the acquisition of the company by its controlling shareholder, Sodexho Alliance, S.A.;

*In re Travelocity.com Shareholder Litigation, (Delaware Chancery Court)*, in which Class Counsel shared responsibility for creating an aggregate financial benefit of approximately $75 million for members of the class, in connection with the acquisition of the company by its controlling shareholder, Sabre Holdings;

*In re Delhaize America Shareholder Litigation (North Carolina Business Court)*, in which Class Counsel shared responsibility for creating an aggregate financial benefit of approximately $225 million for the members of the class in connection with the acquisition of the company by it controlling shareholder; and

*Lieb, et al. v. Unocal Corporation, et al. (Los Angeles Superior Court)*, in which Class Counsel shared responsibility for creating a $500 million benefit via the increased consideration paid by Chevron Corp. to Unocal shareholders in the merger. In addition, Co-Lead Counsel caused defendants to issue important additional disclosures relating to the proposed merger with Chevron prior to the shareholder vote on the merger.

Ms. Weiser was also part of the litigation team that won an injunction in the seminal Delaware Chancery Court case *In re Pure Resources Shareholder Litigation*, forcing changes to certain terms of the proposed transaction as well as the public disclosure of significant additional information concerning the transaction, and, ultimately being partially responsible for an aggregate financial benefit of approximately $41 million for the shareholder class.

## **ROBERT B. WEISER**

Mr. Weiser, a founding member of the firm, received his law degree from the Villanova University School of Law. While in law school, he also served as a law clerk for the Honorable Clarence J. Newcomer, U.S.D.J. for the Eastern District of Pennsylvania. He is licensed to

practice law in Pennsylvania and New Jersey and has been admitted to practice before the United States District Court for the Eastern District of Pennsylvania and the United States District Court for the District of New Jersey. Mr. Weiser's practice is focused on shareholder derivative litigation and ERISA class action litigation. While employed at his prior firm, Mr. Weiser managed the firm's shareholder derivative litigation practice, with a particular focus on corporate governance matters. Mr. Weiser has been involved in some of the most successful shareholder derivative actions in the history of corporate litigation. Over the past several years, Mr. Weiser has been among the nationwide-leaders in prosecuting "option backdating cases" on a derivative basis. In addition to being among the attorneys that developed the central pleading theory in the backdating cases (which in turn produced some of the ground-breaking decisions in this area of law), Mr. Weiser (along with his co-counsel) successfully prosecuted backdating cases which caused the subject corporations to cumulatively receive tens of millions of dollars in benefits. More recently, Mr. Weiser has launched a wave of actions that challenge the executive compensation awarded at the nation's largest banks which received federal "bailout" funds. A sampling of the notable cases in which Mr. Weiser has served as lead or co-lead counsel include:

> *In re Oracle Corp. Derivative Litig.*, 824 A.2d 917 (Del. Ch. 2003). Mr. Weiser was co-lead counsel in the Oracle action. In that case, plaintiffs challenged certain multi-million dollar stock sales made by Oracle's senior officers, including Larry Ellison, Oracle's founder. Oracle's board of directors appointed a "special litigation committee" to investigate plaintiffs' claims, and after a lengthy investigation, the committee moved to dismiss the case, having concluded that plaintiffs' claims lacked merit. Among other things, plaintiffs' challenged the independence of the committee members, their good faith, and their ultimate conclusion. The court denied the committee's motion, which allowed the action to proceed to trial. At the time it was issued, the Oracle decision was one of only four reported Delaware cases where a special litigation committee's motion to dismiss was denied by a Delaware chancellor and many commentators view the Oracle case as a landmark decision for shareholders. For example, the *Wall Street Journal* called the seminal decision "one of the most far-reaching ever on corporate governance." This case eventually settled for $100 million on the eve of trial. Mr. Weiser believes that the $100 million recovery was the second largest derivative settlement ever. The Oracle case, and its impact on corporate governance matters nationwide, is the subject of numerous scholarly articles and treatises.

*In re Affiliated Computer Services Derivative Litig.*, USDC for the ND of TX, No. 3:06-cv-1110. In this option backdating action, plaintiffs challenged the stock option grants received by ACS' officers & directors over a multi-year period. Plaintiffs in a related action purported to settle these claims for approximately $1.8 million, a paltry sum which Mr. Weiser and his co-counsel believed was far less than they were worth. After objecting to the settlement of the related action, and engaging in a contentious discovery battle, Mr. Weiser and his co-counsel were able to materially enhance the settlement by securing a $30 million recovery for ACS. Mr. Weiser believes that this is the largest derivative recovery in an action litigated in Texas.

*In re KB Home Derivative Litigation*, Superior Court of the State of CA, Los Angeles County, Master File No. BC355179. Mr. Weiser was co-lead counsel in this action. In this option backdating action, plaintiffs challenged the stock option grants received by KB Home's officers & directors over a multi-year period. In addition to obtaining valuable corporate governance enhancements for KB, Mr. Weiser and his co-lead counsel settled this action for benefits worth at least $30 million to KB, making it one of the largest derivative settlements in the history of California corporate litigation.

*David, et al., v. Wolfen, et al.*, Superior Court of the State of CA, Orange County, Lead Case No. 01-CC-03930 (the "Broadcom Derivative Action"). Mr. Weiser was co-lead counsel in the Broadcom Derivative Action. Like the Oracle case, the Broadcom Derivative Action was also produced a ground-breaking settlement. In connection with the eventual settlement of the Broadcom Derivative Action, plaintiffs were able to compel Broadcom to make sweeping, substantial changes to its corporate governance practices which included a provision which allows Broadcom's shareholders to nominate directors to Broadcom's Board. In particular, the shareholder-nominated director provision was thought to be a highly significant and unusual achievement for Broadcom's shareholders. As the *Associated Press* reported in commenting on the settlement: "[in contrast to the Broadcom settlement] the Securities and Exchange Commission has met fierce resistance to a proposal just to allow shareholder nominations under very limited circumstances." This type of corporate governance relief has only been achieved in a handful of shareholder derivative actions, and it became a model for corporate governance settlements that followed.

*Barry v. Cotsakos*, CV 49084 (San Mateo County, CA) (the "Etrade Derivative Litigation"). Mr. Weiser was co-lead counsel in the Etrade Derivative Litigation. Mr. Weiser believes that the Etrade Derivative Litigation is one of the most successful executive compensation cases ever brought against a publicly traded corporation's board of directors. In that case, the plaintiff challenged the payment of excessive compensation awarded to Etrade's then-current Chief Executive Officer. As a result of the settlement of the case, Etrade's Chief Executive Officer returned approximately $25 million to the Company, and he also agreed to forego other valuable financial benefits. The Etrade settlement also provided for sweeping changes to the company's corporate governance practices and the structure of its Board. These measures, and the resulting change in the public's perception of Etrade, were profiled in a September 8, 2003 *Wall Street Journal* article entitled "How One Firm Uses Strict Governance To Fix Its Troubles." Since the time of the Etrade settlement, Etrade added independent directors to its Board, who have since forced out the company's Chief Executive Officer. In response to these changes, the Company's stock increased more than 300% in the 18 months following the settlement and the "new" Etrade was the subject of several positive media reports.

*Klotz v. Parfet, et al.*, Case No. 03-06483-CK (In the Circuit Court of Jackson County, Michigan) (the "CMS Derivative Litigation"). Mr. Weiser was co-lead counsel in the CMS Derivative Litigation. In that case, plaintiff alleged that CMS' Board of Directors failed to develop and implement adequate corporate governance practices and internal controls. Plaintiff alleged that the Board's internal control failures caused the Company to suffer enormous damages to its reputation and prestige. In settling the CMS Derivative Litigation, the Weiser Firm was able to recover $12 million for the Company, and the Board agreed to adopt what one commentator called "some of the most substantial corporate governance reforms" ever undertaken by a publicly traded corporation. Mr. Weiser believes that the CMS derivative settlement is the largest in the history of Michigan corporate litigation.

*Gebhardt v. Allumbaugh, et al.*, Case No. 2002-13602 (Harris County, Texas)(the "El Paso Derivative Litigation"). Mr. Weiser was lead counsel in the El Paso Derivative Litigation. This action centered on the Company's alleged anti-competitive conduct in California during that the state's energy crisis of 2001-02. In addition to making sweeping changes to the Board's structure and the Company's corporate governance practices, Mr. Weiser was able to secure a $16.75 million recovery for the Company. Mr. Weiser believes that the El Paso Derivative Litigation was either the first or second largest derivative settlement in Texas history at the time it was agreed to.

*Eliasoph v. Johnson*, C.A. No. 05BCVS-3698 (North Carolina General Civil Litigation Court)(the "SPX Derivative Litigation"). Mr. Weiser was lead counsel in the SPX Derivative Litigation. Like the Etrade Derivative Litigation, Mr. Weiser believes that the SPX Derivative Litigation is among the most successful executive compensation cases ever brought against a publicly traded corporation's board of directors. In this case, the plaintiff challenged the fairness of the Company's entire executive compensation structure. In connection with the settlement of the SPX action, the Company's board of directors agreed to adopt a new executive compensation plan which was designed in part, with plaintiff's counsel and her expert. The new compensation plan more closely aligned shareholder and management interests and it was estimated that the new plan would save the Company at least $25 million.

*In Re Staples, Inc. Shareholders Litigation*, 792 A.2d 934 (Del. Ch. June 5, 2001). Mr. Weiser was one of three lead counsel in the Staples action. In that case, plaintiffs secured a financial benefit worth at least $12 million to Staples by winning an injunction preventing Staples from holding a shareholder vote on an improperly disclosed recapitalization plan that would have unfairly benefitted Staples' insiders at the expense of the Company and its stockholders.

*Wanstrath v. Doctor R. Crants, et al.*, C.A. No. 99-1719-III (Tenn. Chan. Ct., 20th Judicial District, 1999)(the "Prison Realty Derivative Litigation"). In the Prison Realty Derivative Litigation, plaintiff challenged the transfer of assets from Prison Realty to a private entity owned and controlled by several of the Company's top executives. Plaintiffs also alleged that the proposed transaction would have crippled the Company's liquidity. Plaintiffs were able to halt the planned transaction, which prevented the Company from suffering a $120 million loss, which was a highly significant victory in light of the Company's then-precarious financial position. As a result of the settlement of the case, the members of the Company's top management were removed, the composition of the Board of Directors was significantly altered and important corporate governance provisions were

also put in place to prevent future abuse. Notably, all of these corporate benefits occurred at a time when the Company was facing near-certain bankruptcy which would have wiped out shareholders' equity in the Company. Because the Company had adopted these significant changes, it was able to renegotiate the terms of its credit facility with its lenders and it never had to file for bankruptcy protection. Since the time the case was settled, the Company's new management has led the Company, now-named Corrections Corporation of America, to profitability, and the price of the common stock increased more than 400% in the two years following the settlement.

*Huscher v. Curley, et. al.*, No. 00 Civ. 21379 (Mich. Cir. Ct., 2000) (the "Sotheby's Derivative Litigation"). In the Sotheby's Derivative Litigation, plaintiffs alleged that the Company's Chief Executive Officer had entered into illegal price-fixing agreements with the Company's leading purported competitor, Christie's International PLC. As a result of the settlement of this case, the Company received the return of certain monetary benefits which had been provided to the Chief Executive Officer that were worth approximately $12 million to the Company. In addition, significant changes in the Company's top management and Board of Directors were achieved in conjunction with the settlement of the case.

Mr. Weiser has been a frequent commentator on corporate governance matters and has lectured on corporate governance issues in both this country and abroad.

### **BRETT D. STECKER**

Mr. Stecker is a graduate of Franklin & Marshall College and of Villanova University School of Law. While in college, Mr. Stecker earned a B.A. in Government and served as a legislative intern for United States Senator Alfonse M. D'Amato. While in law school, Mr. Stecker served as an Executive Member of the Moot Court Board and represented Villanova in national competitions. Upon graduation from law school, Mr. Stecker was an associate with the Litigation Department of Blank Rome LLP in Philadelphia, PA. After two years at that firm, Mr. Stecker moved to Weir & Partners, LLP, a boutique commercial litigation firm in Philadelphia, where he focused his practice on banking litigation in cases dealing with consumer lending, check fraud, and the enforcement of guarantee and other security agreements. At The Weiser Law Firm, Mr. Stecker concentrates his practice on shareholder derivative and ERISA litigation.

### **JEFFREY J. CIARLANTO**

Mr. Ciarlanto is a graduate of The Pennsylvania State University and Villanova University School of Law. While in college, Mr. Ciarlanto earned Bachelor of Arts degrees in Economics

and Political Science and graduated with honors. During law school, Mr. Ciarlanto served as the Business Editor of Villanova Law's Sports and Entertainment Law Journal. Mr. Ciarlanto also served as a judicial extern for the Honorable Matthew D. Carrafiello of the Philadelphia Court of Common Pleas. Mr. Ciarlanto is licensed to practice law in Pennsylvania and New Jersey. Prior to joining The Weiser Law Firm, Mr. Ciarlanto was an associate at Marks, O'Neill, O'Brien & Courtney, P.C., where he focused his practice on labor and employment law. At The Weiser Law Firm, Mr. Ciarlanto concentrates his practice on shareholder derivative and ERISA litigation.

### HENRY J. YOUNG

Mr. Young is a graduate of the University of Sheffield, England and of William Mitchell College of Law, Minnesota. Mr. Young earned a B.A. in Archaeology and worked as an archaeologist before moving to the United States and attending law school. During law school, Mr. Young received the 2000 Kennedy Scholarship for Public Service and the 1997 Founders' Scholarship. He was also a guest student at Brooklyn Law School specializing in International Law. Mr. Young has devoted almost his entire legal career to representing investors harmed by corporate fraud and executive malfeasance. At The Weiser Law Firm, he concentrates his practice on protecting the interests of investors in corporate mergers and acquisitions.

### KATHLEEN A. HERKENHOFF

Ms. Herkenhoff joined The Weiser Law Firm in January 2010, opening the firm's San Diego, California office. As detailed below, Ms. Herkenhoff has been exclusively litigating securities actions for 16 years, first at the Securities and Exchange Commission ("SEC") and most recently as a Partner at Coughlin Stoia Geller Rudman & Robbins LLP in San Diego.

Ms. Herkenhoff earned her Bachelor of Arts degree in English Literature from the University of California (Berkeley) in 1989. She earned her Juris Doctor degree from Pepperdine University School of Law in 1993, where she was on the Dean's Honor List and received American Jurisprudence Awards in both Constitutional Law and Agency-Partnership. Following

law school, Ms. Herkenhoff worked at the SEC's Los Angeles office, investigating and prosecuting complex securities fraud and insider trading actions.

In 1997, Ms. Herkenhoff joined Milberg Weiss Bershad Hynes & Lerach LLP in Los Angeles, California, and ultimately moved to the firm's San Diego office, where she served as a Partner from 2002 to 2009 (the San Diego office became known as Coughlin Stoia). Over the past 12 years at Coughlin Stoia, Ms. Herkenhoff has practiced in all areas of securities class and derivative litigation, working tirelessly to achieve nearly one billion in settlement recoveries for victimized shareholders. Many of these settlements also include sweeping corporate governance improvements negotiated by Ms. Herkenhoff. A sample of notable settlements includes:

- $618 million in opt-out litigation against AOL Time Warner, Inc.
- $122 million in class action against Mattel, Inc.
- $100 million in class action against Honeywell International, Inc.
- $30+ million in derivative stock option backdating cases

Ms. Herkenhoff continues her nearly two decades of securities litigation experience by joining the firm's extensive securities and derivative practice groups. Ms. Herkenhoff is licensed to practice law in all California state and federal courts, as well as in the District of Colorado.